**Hearing Date: May 14, 2014 at 10:00 a.m. (prevailing Eastern Time)**
**Response Deadline: April 28, 2014 at 4:00 p.m. (prevailing Eastern Time)**

PROSKAUER ROSE LLP
Martin J. Bienenstock
Stephen L. Ratner
Philip M. Abelson
Eleven Times Square
New York, New York 10036
(212) 969-3000

TAFT STETTINIUS & HOLLISTER LLP
W. Timothy Miller
W. Stuart Dornette
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202
(513) 381-2838

*Attorneys for Defendant*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>LEHMAN BROTHERS HOLDINGS INC., *et al.*,<br><br>                Reorganized Debtors. | Chapter 11<br>Case No. 08-13555 (SCC)<br><br>(Jointly Administered) |
| LEHMAN BROTHERS SPECIAL FINANCING, INC.,<br><br>                Plaintiff,<br><br>    -against-<br><br>FEDERAL HOME LOAN BANK OF CINCINNATI,<br><br>                Defendant. | Adv. Proc. No. 13-01330 (SCC) |
| FEDERAL HOME LOAN BANK OF CINCINNATI,<br><br>                Movant,<br><br>    -against-<br><br>LEHMAN BROTHERS SPECIAL FINANCING, INC.,<br><br>                Respondent. | |

**NOTICE OF MOTION OF FEDERAL HOME LOAN BANK OF CINCINNATI,
PURSUANT TO 28 U.S.C. 157(C)(1) AND BANKRUPTCY RULE 9033(A), FOR
PROPOSED CONCLUSIONS OF LAW DISMISSING PLAINTIFF'S FIRST, SECOND,
AND THIRD CAUSES OF ACTION IN ITS COMPLAINT DATED APRIL 17, 2013**

PLEASE TAKE NOTICE that, upon Defendant Federal Home Loan Bank of Cincinnati's

("FHLB Cincinnati") Memorandum of Law, dated April 1, 2014, the Declaration of Philip M.

Abelson, dated April 1, 2014, and the exhibits thereto, and all other proceedings herein, FHLB

Cincinnati will move this Court, before the Honorable Shelley C. Chapman, United States

Bankruptcy Judge, in Courtroom 621 of the United States Bankruptcy Court, Southern District of

New York, One Bowling Green, New York, New York, 10004, at May 14, 2014 at 10 a.m.,

pursuant to Federal Rule of Bankruptcy Procedure 7012(b) and Federal Rule of Civil Procedure

12(b)(6), for Proposed Conclusions of Law pursuant to 28 U.S.C. § 157(c)(1) and Bankruptcy

Rule 9033(a) dismissing Plaintiff's First, Second, and Third Causes of Action in its Complaint

dated April 17, 2013, and for such other and further relief as the Court deems just and proper.

Dated:  April 1, 2014                                    Respectfully submitted,

PROSKAUER ROSE LLP

By: /s/ Martin J. Bienenstock_____
Martin J. Bienenstock
Stephen L. Ratner
Philip M. Abelson
Eleven Times Square
New York, New York 10036
Phone:  (212) 969-3000

TAFT STETTINIUS & HOLLISTER LLP
W. Timothy Miller, Esq.
W. Stuart Dornette, Esq.
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202
Telephone: 513.381.2838

*Attorneys for Defendant*

2

PROSKAUER ROSE LLP
Martin J. Bienenstock
Stephen L. Ratner
Philip M. Abelson
Eleven Times Square
New York, New York 10036
(212) 969-3000

TAFT STETTINIUS & HOLLISTER LLP
W. Timothy Miller
W. Stuart Dornette
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202
(513) 381-2838

Attorneys for Defendant

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>LEHMAN BROTHERS HOLDINGS INC., *et al.*,<br><br>    Reorganized Debtors. | Chapter 11<br>Case No. 08-13555 (SCC)<br><br>(Jointly Administered) |
| LEHMAN BROTHERS SPECIAL FINANCING, INC.,<br><br>    Plaintiff,<br><br>  -against-<br><br>FEDERAL HOME LOAN BANK OF CINCINNATI,<br><br>    Defendant. | Adv. Proc. No. 13-01330 (SCC) |
| FEDERAL HOME LOAN BANK OF CINCINNATI,<br><br>    Movant,<br><br>  -against-<br><br>LEHMAN BROTHERS SPECIAL FINANCING, INC.,<br>    Respondent. | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF
FEDERAL HOME LOAN BANK OF CINCINNATI, PURSUANT TO
28 U.S.C. 157(C)(1) AND BANKRUPTCY RULE 9033(A), FOR PROPOSED
CONCLUSIONS OF LAW DISMISSING PLAINTIFF'S FIRST, SECOND,
AND THIRD CAUSES OF ACTION IN ITS COMPLAINT DATED APRIL 17, 2013**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................1

PROCEDURAL HISTORY...............................................................................................3

ALLEGATIONS IN THE COMPLAINT ..........................................................................4

      A.     The Transactions at Issue.........................................................................4

      B.     Termination of the Transactions ..............................................................5

      C.     Claims Asserted by LBSF..........................................................................7

      D.     Limits on Judicial Power ..........................................................................8

ARGUMENT .....................................................................................................................9

I.      Standard of Review...............................................................................................9

II.     Plaintiff's Declaratory Judgment Claims Are
       Duplicative of Its Claim for Breach of Contract.................................................9

CONCLUSION.................................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Amusement Indus. v. Stern,
  693 F. Supp. 2d 301 (S.D.N.Y. 2010)......................................................................10

Ashcroft v. Iqbal,
  556 U.S. 662 (2009)..................................................................................................9

Bell Atlantic Corp. v. Twombly,
  550 U.S. 544 (2007)..................................................................................................9

CAMOFI Master LDC v. College P'ship,
  05 Civ. 6775 (DC), 452 F.Supp. 2d 462 (S.D.N.Y. 2006)..................................9, 11

Carter Day Indus., Inc. v. EPA (In re Combustion Equip. Assocs., Inc.),
  838 F.2d 35 (2d Cir. 1988)......................................................................................13

Core-Mark Int'l Corp. v. Commonwealth Insurance Co.,
  No. 05 Civ. 0183, 2006 WL 2501884 (S.D.N.Y. Aug. 30, 2006) ..........................10

In re DDAVP Direct Purchaser Antitrust Lit.,
  585 F.3d 677 (2d Cir. 2009)......................................................................................9

Dolphin Direct Equity Partners, LP v. Interactive Motorsports & Entm't Corp.,
  No. 08 Civ. 1558 (RMB), 2009 U.S. Dist. LEXIS 21938 (S.D.N.Y. March 2, 2009) ............11

Fleisher v. Phoenix Life Ins. Co.,
  858 F. Supp. 2d 290 (S.D.N.Y. 2012)................................................................10, 13

Goldmark, Inc. v. Catlin Syndicate Ltd.,
  09-CV-3876(RRM)(RER), 2010 U.S. Dist. LEXIS 141967 (E.D.N.Y. Nov. 22, 2010).........10

Intellectual Capital Partner v. Institutional Credit Partners LLC,
  08 Civ. 10580 (DC), 2009 U.S. Dist. LEXIS 58768 (S.D.N.Y. July 8, 2009) ...................9, 10

Lafaro v. New York Cardiothoracic Group, PLLC,
  570 F.3d 471 (2d Cir. 2009)......................................................................................9

Mars Adver. Eur. Ltd. v. Young & Rubicam, Inc.,
  No. 13 Civ. 0401 (CM), 2013 U.S. Dist. LEXIS 60489 (S.D.N.Y. Apr. 24, 2013) ..........10, 12

Miramax Film Corp. v. Abraham,
  No. 01 CV 5202, 2003 WL 22832384 (S.D.N.Y. Nov. 25, 2003) ..........................10

Nat'l Union Fire Ins. Co. of Pittsburgh v. Int'l Wire Grp., Inc.,
  No. 02 Civ. 10338, 2003 WL 21277114 (S.D.N.Y. June 2, 2003)..........................13

*Singh v. Wells*,
445 Fed. Appx. 373 (2d Cir. 2011) ........................................................................................4

*Sofi Classic S.A. de C.V. v. Hurowitz*,
444 F.Supp. 2d 231 (S.D.N.Y. 2006) ....................................................................................11

**STATUTES AND OTHER AUTHORITIES**

12 U.S.C. § 1421 ...................................................................................................................4

28 U.S.C. § 157(c)(1) .................................................................................................1, 3, 8, 13

Fed. R. Civ. P. 12(b)(6) ......................................................................................................9, 13

Fed. R. Bankr. P. 7012(b) .......................................................................................................13

Fed. R. Bankr. P. 9033(a) .........................................................................................................1

Defendant Federal Home Loan Bank of Cincinnati ("FHLB Cincinnati") respectfully submits this Memorandum of Law in Support of Motion of Federal Home Loan Bank of Cincinnati, Pursuant to 28 U.S.C. 157(c)(1) and Bankruptcy Rule 9033(a), For Proposed Conclusions of Law Dismissing Plaintiff's First, Second, and Third Causes of Action In Its Complaint Dated April 17, 2013 (the "Complaint"), filed against it by Plaintiff Lehman Brothers Special Financing, Inc. ("LBSF").

## PRELIMINARY STATEMENT

This is a case in which LBSF seeks damages for an alleged breach of a written contract. The Complaint invokes no bankruptcy law. LBSF asserts that FHLB Cincinnati paid it less than the full amount allegedly owed upon termination of the parties' interest rate swaps, and it claims damages for the balance purportedly due. The claim turns entirely on the determination of the parties' past obligations to each other under the terms and conditions of the swaps, which were automatically terminated five years ago when LBSF's parent corporation filed for bankruptcy. There is no question that LBSF's Fourth Cause of Action seeking damages for breach of contract encompasses all issues necessary for complete resolution of this dispute. FHLB Cincinnati brings its instant motion because LBSF's Complaint overlays its single cause of action with three other causes of action designed to lead the Court through three unnecessary exercises based on LBSF's self-serving theory of the case.

LBSF's **three** declaratory judgment counts (its First through Third Causes of Action) each seeks a separate declaration of a fact or legal conclusion embodied in the Fourth Cause of Action. Thus, LBSF has sliced a single claim into some of its component issues and seeks a declaration on each one. Its declaratory judgment claims do not raise any additional issues or seek any relief not part of the breach of contract claim. Under these circumstances,

overwhelming jurisprudence cited below shows the duplicative declaratory judgment counts should be dismissed.

Moreover, there is an equally compelling logical reason to dismiss the three counts. Namely, they include embedded legal and factual conclusions designed to lead the Court to the wrong result, and the resolution of those issues by summary judgment or trial duplicates the resolution of the fourth cause of action, the only viable count in the Complaint.

For example, the Complaint (at ¶ 2) admits Lehman Brothers Holdings Inc. ("LBHI") commenced its chapter 11 case at 1:45 a.m. on Monday September 15, 2008, constituting a default of LBSF's contract with FHLB Cincinnati.  As the nondefaulting party, FHLB Cincinnati was entitled under the contract to calculate the amounts owing, and did so by procuring market quotations as of the close of business on Friday, September 12, 2008.  The contract expressly allowed FHLB Cincinnati to choose in good faith the date and time as of which it procured market quotations.  The quotations FHLB Cincinnati obtained also had the benefit of not being influenced by the subsequent market frenzy caused by LBHI's own default, as contemplated by the "Automatic Early Termination" feature of the contract, and were the most current quotations available as of 1:45 a.m. on Monday, September 15.

LBSF, however, insists on benefitting from the market frenzy LBHI ignited.  Therefore, LBSF asks the court in its second cause of action to declare that the amount owing based on the September 12 quotations must be disregarded.  Stealthily embedded within LBSF's request are its implicit factual and legal conclusions that (a) FHLB Cincinnati, as the nondefaulting party had no good faith discretion to use the September 12 quotations, (b) the Friday, September 12 quotations at close of business were somehow immaterial to values as of 1:45 a.m. on the very next business day before the markets opened, and (c) only new market quotations from the close

2

of business (4 p.m.) on September 15 can be used to calculate damages as of 1:45 a.m.  All those factual and legal issues will be heard on a motion for summary judgment or a trial regarding the fourth cause of action, when the Court will have the benefits of (a) consideration of the big picture and how all the contractual provisions work together, and (b) if necessary, expert opinion testimony on the transactions.  It makes no logical sense for the Court to put on LBSF's proffered blinders to the entirety of the transactions and conduct separate hearings on LBSF's embedded assumptions in the context of counts one through three, when those issues and others will be heard in the fourth count, and, if necessary, the same experts will opine on all the issues together, and will not necessarily parse them as LBSF wishes for its own advantage.

## **PROCEDURAL HISTORY**

By order dated March 17, 2014, the District Court denied FHLB Cincinnati's motion for reference withdrawal.[1]  The District Court reasoned, among other things, that FHLB Cincinnati could avoid dual hearings by waiving its article III rights and that FHLB Cincinnati's assertion that such waiver may not even be constitutional was unpersuasive.  While FHLB Cincinnati respectfully disagrees and does not believe it should have to waive its article III rights to avoid dual proceedings in the Bankruptcy Court and the District Court, its reference withdrawal motion was denied and it is proceeding first in this Court in accordance with 28 U.S.C. § 157(c)(1).

FHLB Cincinnati and LBSF entered into a stipulation dated June 27, 2013, providing that FHLB Cincinnati would "answer, move, or otherwise respond to the Complaint" up through 14 days after determination of the reference withdrawal motion.  (*See* Docket No. 8).  At this point, the parties have not commenced discovery as to the Complaint.

---

[1] On March 25, 2014, the District Court withdrew its previous order and re-issued a revised version on March 27, clarifying a point in footnote 4 of the original order.

## ALLEGATIONS IN THE COMPLAINT

### A.    The Transactions at Issue

FHLB Cincinnati is one of twelve federally-chartered, federally-regulated Federal Home Loan Banks established under authority of the Federal Home Loan Bank Act of 1932, 12 U.S.C. §§ 1421 *et seq*. (Compl. ¶ 15)[2].  As of September 12, 2008, FHLB Cincinnati and LBSF were counterparties to 87 interest rate swap transactions (the "Transactions"), each of which were governed by a Master Agreement between FHLB Cincinnati and LBSF, dated September 6, 2001, and a number of accompanying documents, including a Schedule, a Guarantee, a Credit Support Annex and a trade Confirmation for each individual Transaction (collectively, the "Agreement").[3]  (Compl. ¶ 16.)  While the Master Agreement was a form agreement developed by the International Swap Dealers Association and published in 1992, the accompanying documents contained additional terms and conditions of the transactions, including the parties' elections regarding certain alternative terms and conditions presented by the Master Agreement. (*See* Abelson Decl. Ex. A.)  Notably, under the Schedule to the Master Agreement, the parties selected "Second Method" and "Market Quotation" to govern in the event of a termination of a Transaction.

The Agreement named LBHI, LBSF's parent corporation, as a "Credit Support Provider" to LBSF.  (Schedule to Master Agreement, Part 4, ¶ (g).)  The Agreement further provided for "Automatic Early Termination" of the Transactions under specified circumstances, including if LBSF or LBHI "institutes or has instituted against it a proceeding seeking a judgment of

---

[2] *See* Docket No. 1

[3] Copies of the Master Agreement, the Schedule and the Credit Support Annex are annexed to the *Declaration of Philip M. Abelson In Support of Motion of Federal Home Loan Bank of Cincinnati, Pursuant to 28 U.S.C. 157(c)(1) and Bankruptcy Rule 9033(a), for Proposed Conclusion of Law Dismissing Plaintiff's First, Second, and Third Cases of Action in its Complaint Dated April 17, 2013* ("Abelson Decl.") as Exhibit A. Because these documents are incorporated in and are heavily relied upon in the Complaint, the Court may consider them on this Motion to Dismiss. *See Singh v. Wells*, 445 Fed. Appx. 373, 375 (2d Cir. 2011).

insolvency or bankruptcy or any other relief under any bankruptcy or insolvency law or any

other similar law affecting creditors' rights, or a petition is presented for its winding-up or

liquidation… ."  (Master Agreement, ¶¶ 5(vii)(4) and 6(a); Schedule at Part 1, ¶ (e).)

**B.    Termination of the Transactions**

At approximately 1:45 a.m. on Monday, September 15, 2008, LBHI commenced a

voluntary case under chapter 11 of the Bankruptcy Code with the United States Bankruptcy

Court for the Southern District of New York.  (Compl. ¶¶ 2, 13.)  The filing triggered the

Automatic Early Termination provision of the Agreement with respect to all 87 Transactions,

which provided that the Transactions terminated on the "Early Termination Date," defined as

occurring "as of the time immediately preceding the institution of" the bankruptcy proceeding.

(Master Agreement, ¶ 6(a).)  Accordingly, FHLB Cincinnati identified Friday, September 12 –

the last business day preceding the bankruptcy filing – as the Early Termination Date.  (Compl.

¶ 34.)  (LBSF makes much in its Complaint of its contention that the Early Termination Date

was September 15, 2008.  (Compl. ¶¶ 6 and 42-49).  As discussed below, because the default

occurred at 1:45 a.m. on Sept. 15 before the market opened, and no international markets were

open that weekend, the use of market quotations from close of business Friday Sept. 12 is

equally appropriate whether the Early Termination Date was Sept. 12, 13, 14, or 15.)

As the non-defaulting party, FHLB Cincinnati had the exclusive contractual right to

calculate the "Payments on Early Termination."  (Master Agreement ¶ 14, "Market Quotation.")

As noted, under the Agreement, FHLB Cincinnati was required to perform this calculation using

the "Market Quotation" method, which required, among other things, that FHLB Cincinnati ask

at least four "Reference Market-makers" (defined as leading dealers in the relevant market) to

quote the price at which they would enter into a transaction or transactions "that would have the

effect of preserving for [FHLB Cincinnati] the economic equivalent" of the terminated

transactions.  (*Id.*)  The Agreement further provided that:

> The party making the determination…will request each Reference Market-maker
> to provide its quotation to the extent reasonably practicable as of the same day
> and time (without regard to different time zones) on or as soon as reasonably
> practicable after the relevant Early Termination Date.  The day and time as of
> which those quotations are to be obtained will be selected in good faith by the
> party obliged to make the determination…

(*Id.*)

The first sentence of this provision required FHLB Cincinnati to request that the market

makers provide their quotations on or as soon as reasonably practicable after the Early

Termination Date.  LBSF does not challenge the promptness with which FHLB Cincinnati

obtained its quotations.  The second sentence expressly granted FHLB Cincinnati discretion to

select the date and time "as of" which the quotations would price the transaction, so long as the

date and time were consistent and selected in good faith.

FHLB Cincinnati complied with each of these requirements.  Shortly after the bankruptcy

filing, FHLB Cincinnati requested quotations from market makers as of the close of business on

Friday, September 12.  (Compl. ¶¶ 34-35.)  After deducting certain undisputed setoffs and other

amounts as per the Agreement, FHLB Cincinnati paid $191.9 million[4] to LBSF on September

25, 2008.  (Compl. ¶ 37.)  Tellingly, LBSF does not and cannot allege that FHLB Cincinnati

acted in bad faith in selecting close of business on Friday, September 12 as the "as of" date and

time of market quotations.

---

[4] LBSF held collateral in the amount of approximately $178 million, leaving an additional $13.7 million (after other
offsets) owed to LBSF. That amount was wired by FHLB Cincinnati to LBSF on September 25, 2008.

C.      **Claims Asserted by LBSF**

LBSF alleges that FHLB Cincinnati's payment was inadequate, and that FHLB

Cincinnati breached the Agreement by failing to pay a different amount ($255 million) that

LBSF calculated – apparently months later – and claims it was owed under the Agreement.  First,

LBSF contends that FHLB Cincinnati's designation of September 12 as the Early Termination

Date was incorrect.  LBSF argues the "time immediately preceding" the bankruptcy filing was

approximately 1:45 a.m. on Monday, and that the Early Termination Date was therefore

Monday, September 15.  (Compl. ¶¶ 21, 29, 35.) LBSF further alleges that the Payments on early

termination should have been determined using market quotations "as of" a date that was "on or

as soon as reasonably practicable after" the Early Termination Date.  (*Id.*)  In other words, it

contends that the "on or as soon as reasonably practicable" language in the market quotation

provision should be read to apply to the date "as of" which the quotations should have been

requested, rather than the timing of when the market makers were to provide quotations.

As a practical matter, whether the Early Termination Date was Friday, Saturday, Sunday,

or Monday (Sept. 12-15, 2008), the only market quotations available "as of" 1:45 a.m. on

Monday, September 15, 2008 were Friday's closing prices.  LBSF does not claim otherwise, but

nevertheless illogically contends FHLB Cincinnati should have used prices as of the close of

business Monday – a full trading day after the bankruptcy filing.  (Compl. ¶¶ 32, 35.)  Nowhere

does LBSF explain how waiting to the close of business on September 15, 2008 is even remotely

logical, fair, or required when the default occurred at 1:45 a.m, especially given the fact that the

"Automatic Early Termination" feature is designed to avoid the adverse market effects of an

event such as bankruptcy.

LBSF's demand, however, exposes LBSF's case for what it is:  unprincipled.  It has

chosen the number best for LBSF and ignored FHLB Cincinnati's exclusive right, as the

nondefaulting party, to exercise its discretion in good faith to calculate the amounts owing. LBSF alleges that its self-serving calculation as of close of business on September 15 would have resulted in an additional $63 million payable to LBSF.  (Compl. ¶ 40.)  LBSF asserts its claim for this amount in damages, plus interest, as the Fourth Cause of Action in the Complaint, for breach of contract.  (Compl. ¶¶ 63-69.)

In an exercise in creative drafting, LBSF has also included three declaratory judgment counts, seeking declarations concerning:  (a) whether the Early Termination Date was September 15, 2008 (First Cause of Action); (b) whether FHLB Cincinnati's calculation of the Payments on Early Termination as of close of business on September 12, 2008 was proper (Second Cause of Action); and (c) whether the Payments on Early Termination should have been calculated as of a date on or after September 15, 2008 (Third Cause of Action).  LBSF does not seek any monetary, injunctive, or other relief in any of these counts; nor do the first three counts raise any issues that are not encompassed by LBSF's breach of contract claim in its fourth count.  LBSF also does not claim the parties owe any continuing or future obligations to each other under the Agreement or with respect to any of the Transactions, which were automatically terminated in 2008.

D.     **Limits on Judicial Power**

As admitted in the Complaint, this adversary proceeding is "non-core" under section 28 U.S.C. § 157(c)(1).  FHLB Cincinnati does not consent to this Court's exercising the essential attributes of judicial power with respect to the Complaint, inclusive of determining the instant motion to dismiss the first three causes of action.

## ARGUMENT

### I.    Standard of Review

For purposes of a Rule 12(b)(6) motion to dismiss, the court should accept as true the factual allegations contained in the Complaint and draw all reasonable inferences in favor of Plaintiff.  *See In re DDAVP Direct Purchaser Antitrust Lit.*, 585 F.3d 677, 692 (2d Cir. 2009). Nonetheless, only a "plausible claim for relief survives a motion to dismiss." *Lafaro v. New York Cardiothoracic Group, PLLC*, 570 F.3d 471, 476 (2d Cir. 2009).  Thus, a plaintiff's allegations must be sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Courts are "not bound to accept as true a legal conclusion couched as a factual allegation, and [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  As shown below, Plaintiff's declaratory judgment counts fail to state claims independent of the Fourth Cause of Action, and therefore should be dismissed.

### II.    Plaintiff's Declaratory Judgment Claims Are Duplicative of Its Claim for Breach of Contract

"Declaratory relief is intended to settle legal rights and remove uncertainty and insecurity from legal relationships without awaiting a violation of the rights or disturbance of the relationships." *Intellectual Capital Partner v. Institutional Credit Partners LLC*, 08 Civ. 10580 (DC), 2009 U.S. Dist. LEXIS 58768, at *14 (S.D.N.Y. July 8, 2009) (citing *Nat'l Union Fire Ins. Co. of Pittsburgh v. Int'l Wire Group, Inc.*, No. 02 Civ. 10338 (SAS), 2003 U.S. Dist. LEXIS 9193, at *4 (S.D.N.Y. June 2, 2003).  The exercise of declaratory jurisdiction is within the discretion of the Court.  *CAMOFI Master LDC v. College P'ship*, 05 Civ. 6775 (DC), 452 F.Supp. 2d 462, 480 (S.D.N.Y. 2006) (citation omitted).  In deciding whether to exercise that

discretion, courts are tasked with evaluating: "whether a declaratory judgment will (1) 'serve a useful purpose in clarifying and settling the legal relations in issue;' or (2) 'afford relief from the uncertainty, insecurity and controversy giving rise to the proceeding.'" *Mars Adver. Eur. Ltd. v. Young & Rubicam, Inc.,* No. 13 Civ. 0401 (CM)*, 2013 U.S. Dist. LEXIS 60489, at \*29 (S.D.N.Y. Apr. 24, 2013) (citation omitted).  The declarations Plaintiff seeks here will not accomplish either purpose.

It is well settled that "[a] claim for declaratory judgment interpreting a contract provision does not lie when that provision will necessarily be interpreted… during the adjudication of [a] breach of contract claim." *Mars*, 2013 U.S. Dist. LEXIS 60489, at \*29-30.  Under these circumstances, "the declaratory judgment will serve no useful purpose," and the breach of contract claim is the "better and more effective remedy."  *Amusement Indus. v. Stern*, 693 F. Supp. 2d 301, 311 (S.D.N.Y. 2010); *accord Fleisher v. Phoenix Life Ins. Co.*, 858 F. Supp. 2d 290, 302-304 (S.D.N.Y. 2012); *Goldmark, Inc. v. Catlin Syndicate Ltd.*, 09-CV-3876(RRM)(RER), 2010 U.S. Dist. LEXIS 141967, at \*22 (E.D.N.Y. Nov. 22, 2010); *Intellectual Capital Partner,* 2009 U.S. Dist. LEXIS 58768, at \*16; *Core-Mark Int'l Corp. v. Commonwealth Insurance Co.*, No. 05 Civ. 0183, 2006 WL 2501884, at \*9 (S.D.N.Y. Aug. 30, 2006); *Miramax Film Corp. v. Abraham*, No. 01 CV 5202, 2003 WL 22832384, at \*15 (S.D.N.Y. Nov. 25, 2003).  Indeed, as one court has explained, a request for a declaration that is entirely duplicative of a breach of contract claim is a "misuse of the declaratory judgment action." *Mars*, 2013 U.S. Dist. LEXIS 60489, at \*29-30.  Accordingly, courts regularly exercise their discretion to dismiss such claims.  *See*, *e.g.*, *Fleisher*, 858 F. Supp. 2d at 302-304 (dismissing declaratory judgment claim as duplicative of other causes of action); *Goldmark*, 2010 U.S. Dist. LEXIS 141967, at \*22  (same); *Intellectual Capital Partner*, 2009 U.S. Dist.

LEXIS 58768, at *16 (same) *Dolphin Direct Equity Partners, LP v. Interactive Motorsports &*

*Entm't Corp.*, No. 08 Civ. 1558 (RMB), 2009 U.S. Dist. LEXIS 21938, at *11 (S.D.N.Y.

March 2, 2009) (same); *CAMOFI Master LDC*, 452 F.Supp. 2d 480 (same); *Sofi Classic S.A. de*

*C.V. v. Hurowitz*, 444 F.Supp. 2d 231, 249-250 (S.D.N.Y. 2006) (same).

In *Mars*, for example, Plaintiff alleged a claim for breach of contract and sought a

declaratory judgment construing the same disputed term in the agreement that gave rise to the

contract claim. *Id.* at *8-9. The Court dismissed the declaratory judgment count because the

provision in question would necessarily be construed during the resolution of Plaintiff's breach

of contract claim. *Id.* at *30. Similarly, here, Plaintiff seeks declaratory judgments on three

points: (1) whether the Early Termination Date was September 15, 2008; (2) whether FHLB

Cincinnati's calculation of the Early Termination Payment using September 12, 2008 as the

Early Termination Date breached the Agreement; and (3) whether the Early Termination

Payment should be calculated as of September 15, 2008 or later. (Compl. ¶¶ 49, 56, 62).

Plaintiff's breach of contract claim is premised on the exact same issues – *i.e.,* that the Early

Termination Date was September 15; that the Agreement should be interpreted as requiring

FHLB Cincinnati to calculate the termination payment as of a date on or after that Early

Termination Date; and that FHLB Cincinnati's termination payment, which was calculated as of

September 12, was therefore insufficient. (Compl. ¶¶ 35, 40.) Indeed, in a recent filing, Plaintiff

conceded that each of its declaratory judgment claims encompasses what it calls a "threshold

issue" to the resolution of Plaintiff's contract claim, and that it "carefully constructed" these

claims to encourage the court to "address" each issue in a piecemeal fashion, rather than as part

of the breach of contract claim as a whole. (*See* Pls.' Opp. To Def.'s Motion to Withdraw

Reference, Abelson Decl. Ex. B. at 17.). This attempted tactical misuse of the declaratory

judgment remedy should be rejected.  Accordingly, Plaintiff's declaratory judgment claims are entirely duplicative of the breach of contract claim, would serve no "useful purpose" and should be dismissed.  *See Mars*, U.S. Dist. LEXIS 60489, at \*30; *CAMOFI* 452, F. Supp. 2d at 480.

Moreover, LBSF's selective pleading of these "threshold issues" presents an incomplete and misleading picture of this dispute, such that piecemeal litigation of these issues as Plaintiff has framed them would be prejudicial to FHLB Cincinnati.  Among other things, LBSF ignores certain indisputable facts:  (a) regardless of whether the Early Termination Date was Friday, September 12 or early in the morning on Monday, September 15, the only market data available as of 1:45 a.m. on Monday morning was Friday's closing prices; and (b) even assuming the Early Termination Date was September 15, LBSF has offered no legal, contractual, or other justification for its insistence that Monday's closing prices should be used, as opposed to prices "as of" another time on Monday.  As to the latter point, LBSF is proceeding on the faulty premises that there is only one correct calculation under the contract, and that only end-of-day prices may be used.  LBSF thus erroneously concludes – and asks the Court to likewise conclude – that it therefore makes no difference that the contract specifically gives to FHLB Cincinnati, as the non-defaulting party, the exclusive contractual right to calculate the Early Termination Payment, so long as it did so in good faith.  This is a meaningful, bargained-for right under the contract, and it is key to the interpretation of the contractual provisions at issue here.  The case should be tried as a single, breach of contract claim so that all these issues can be considered together by the Court.  If an evidentiary trial is required, witnesses should only have to attend one trial in the Bankruptcy Court, not four.

Finally, the declaratory judgments Plaintiff seeks will not afford relief from uncertainty, insecurity, or controversy.  "[D]eclaratory relief is intended to operate prospectively" not

retrospectively.  *Fleisher*, 858 F. Supp. 2d at 301.  Plaintiff does not, and indeed cannot, seek any form of prospective relief.  All of the Transactions between the parties that were governed by the Agreement were terminated in 2008 by LBHI's bankruptcy filing.  The parties have no ongoing or future rights or obligations to clarify.  *See Nat'l Union Fire Ins. Co. of Pittsburgh v. Int'l Wire Grp., Inc*., No. 02 Civ. 10338, 2003 WL 21277114, at *5 (S.D.N.Y. June 2, 2003) ("declaratory relief is intended to operate prospectively. There is no basis for declaratory relief where only past acts are involved"); *Carter Day Indus., Inc. v. EPA (In re Combustion Equip. Assocs., Inc.)*, 838 F.2d 35, 37 (2d Cir. 1988) ("The purpose of the [Declaratory Judgment] Act is to enable parties to adjudicate disputes ***before*** either side suffers great damage.") (emphasis added).  In a retrospective action such as the present case, a breach of contract claim is more useful because the parties' relationship has terminated.  The sole outstanding issue is what amount was due and payable nearly five years ago, and the breach of contract action will fully and finally resolve that question.  Accordingly, the superfluous declaratory judgment claims should be dismissed.

[*Remainder of Page Left Intentionally Blank*]

## CONCLUSION

Pursuant to 28 U.S.C. § 157(c)(1), the Court should propose conclusions of law granting

FHLB Cincinnati's motion to dismiss Plaintiff's First, Second, and Third causes of action, in

their entirety and with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6)

(incorporated by Federal Rule of Bankruptcy Procedure 7012(b)).

Dated:  April 1, 2014      Respectfully submitted,

              PROSKAUER ROSE LLP


              By:  /s/ Martin J. Bienenstock
              Martin J. Bienenstock
              Stephen L. Ratner
              Philip M. Abelson
              Eleven Times Square
              New York, New York 10036
              Phone:  (212) 969-3000
              Fax:  (212) 969-2900

              TAFT STETTINIUS & HOLLISTER LLP
              W. Timothy Miller, Esq.
              W. Stuart Dornette, Esq.
              425 Walnut Street, Suite 1800
              Cincinnati, Ohio 45202
              Telephone:  513.381.2838
              Facsimile:  513.381.0205

              *Attorneys for Defendant*

14