Proskauer Rose LLP   Eleven Times Square   New York, NY 10036-8299

June 11, 2014

By Email

Honorable Shelley C. Chapman
United States Bankruptcy Judge
United States Bankruptcy Court
One Bowling Green
New York, NY 10004-1408

Martin J. Bienenstock
Member of the Firm
d 212.969.4530
f 212.969.2900
mbienenstock@proskauer.com
www.proskauer.com

Re:  *Lehman Brothers Special Financing Inc. v. Federal Home Loan Bank of Cincinnati*,
     Adv. Proc. No. 13-01330 (SCC)

Dear Judge Chapman:

    As attorneys for Federal Home Loan Bank of Cincinnati ("FHLB") in the above-captioned adversary proceeding, we write in response to Lehman Brothers Special Financing Inc.'s ("LBSF") April 7, 2014 letter-brief (the "April 7 Letter"). This letter explains why FHLB's motion to dismiss three counts in LBSF's complaint should be determined before LBSF is allowed to file motions for summary judgment on two of those counts.

    **Procedural History**. LBSF filed its complaint against FHLB (the "Complaint") on April 17, 2013. By stipulation, FHLB's time to "answer, move, or otherwise respond" to the Complaint was deferred until fourteen days after the District Court ruled on LBSF's reference withdrawal motion. By orders dated March 17, 25, and 27, 2014, the District Court denied the motion, withdrew its denial, and then filed a denial based on a revised opinion. In accordance with the timing specified in the parties' stipulation, FHLB responded to the Complaint by moving to dismiss three of its four counts on April 1, 2014 (the "Motion to Dismiss"), and requesting that this Court issue proposed conclusions of law sustaining its Motion to Dismiss.[1] The Complaint and the District Court's orders acknowledge the Complaint is non-core.

    **The Dispute to be Considered at the Upcoming Conference**. LBSF's Complaint contains one cause of action alleging FHLB breached a derivative contract by paying LBSF less than the amount LBSF contends it was owed when LBSF defaulted. The complaint, however, contains three additional counts in which LBSF requests three declaratory judgments seeking to establish separate facts LBSF contends will cause it to prevail on its damage claim for breach of contract. Supported by overwhelming local jurisprudence and practical considerations, FHLB moved to dismiss the three declaratory judgment counts. They convert one cause of action resolvable by one hearing or trial into four causes of action that LBSF asks this Court to resolve

---

[1] As noted in the Motion to Dismiss, FHLB does not consent to final adjudication of the Complaint by this Court. In any event, whether a litigant can constitutionally consent to have private rights finally adjudicated by a non-Article III court remains uncertain. See Executive Benefits Ins. Co. v. Arkison, 573 U.S. ___, No. 12-1200 (June 9, 2014) (Slip Op.) at 4, n.4 ("[W]hether Article III permits a bankruptcy court, with the consent of the parties, to enter final judgment on a Stern claim" is reserved "for another day").

**Proskauer»**

Hon. Shelley C. Chapman
June 11, 2014
Page 2

one at a time.  Rather than answer the Motion to Dismiss, LBSF, in its April 7 Letter, requests Your Honor to allow it to move for summary judgment seeking declaratory judgments on two of the three counts FHLB had moved to dismiss.

Thus, as LBSF has set this up, if Your Honor grants LBSF's request to file summary judgment motions on two of its four counts, FHLB's Motion to Dismiss those counts will be *de facto* denied without a hearing, or FHLB will have to answer those motions before Your Honor determines whether the two counts should be dismissed in the first place.

LBSF argues that its conversion of one cause of action into four causes of action is designed to foster efficiency and settlement discussions.  LBSF, however, is not entitled to violate black letter law by claiming it is acting in the interest of efficiency and settlement (which, in any event, it is not), and Your Honor is totally capable of promoting efficiency and settlement with a simple chambers conference or other appropriate action, while avoiding the morphing of one cause of action into four.  In any event, as shown below, LBSF's declaratory judgment counts fail due to legal reasons and due to the practical reason that they are not susceptible to resolution without factual resolution of the entire complaint.  Said another way, the "facts" LBSF contends are determinative – and should be declared by this Court as such – differ markedly from the facts FHLB contends are determinative due to the parties' different interpretations of the governing contract.

**LBSF's Multiple Counts Serve Only to Obfuscate Plain Contract Language**.  In this case, LBSF is the party responsible for the event of default, and FHLB is the innocent party.  The derivative contract in issue specifies that the non-defaulting party (here, FHLB) has the exclusive right to calculate amounts owing and, as FHLB did here, should (a) request market quotations as of a single day and time FHLB selects in good faith, and (b) make the request for quotations on or as soon as reasonably practicable after the Early Termination Date.  LBSF's overarching tactic is to cause the Court to equate the requirement that FHLB request quotations after the Early Termination Date with the non-existent requirement that the quotations be as of a time after the Early Termination Date, rather than simply be as of a time selected in good faith by FHLB, as the contract provides:

> *"…The party making the determination ... will request each Reference Market-maker to provide its quotation to the extent reasonably practicable as of the same day and time ... on or as soon as reasonably practicable after the relevant Early Termination Date. The day and time as of which those quotations are to be obtained will be selected in good faith by the party obliged to make a determination ..."* (emphasis added).

Derivative Contract at §14 (definition of Market Quotation).  Simply put, as the event of default occurred on Monday September 15 at 1:45 a.m. (before markets reopened), there is no plausible basis on which LBSF can challenge FHLB's use of market quotations as of the close of trading on Friday September 12.  Friday's closing prices were the most recent

**Proskauer»**

Hon. Shelley C. Chapman
June 11, 2014
Page 3

prices available as of 1:45 a.m. Monday morning, and were the last prices unaffected by LBSF's own default.

Lacking any plausible objection to FHLB's use of the last prices available before the event of default, LBSF concocted the contention in its Complaint (at ¶ 36) that FHLB must use quotations from the close of business on Monday September 15 – a full business day after the default. Inadvertently, LBSF proves itself wrong by making that contention because by doing so, LBSF admits the quotations can be as of the same day (rather than the following day) it contends is the Early Termination Date. If it can be the same day, then it can be as of 1:45 a.m. on that day, and the prices then available were the prices when the market was last open.

LBSF's effort to contort the contract's meaning into what LBSF wishes it said by asking for declaratory and summary judgments conforming to its "interpretation," fails because the judgments it requests are procedurally barred and because they cannot be adjudicated absent an interpretation of the entire contract.

**The Declaratory Judgment Counts Must Be Dismissed as a Matter of Law**. The three declaratory relief counts seek declarations establishing certain purported elements of LBSF's fourth cause of action for breach of contract.[2] This tactic is routinely judicially rebuked for two reasons. First, it is well established in this district (with no authority to the contrary) that declaratory relief duplicative of, or encompassed by, a breach of contract claim is impermissible, and courts in this district routinely dismiss offending counts on this basis. See Motion to Dismiss at 10-12. Second, declaratory relief can only be obtained on a prospective basis to eliminate uncertainty between the parties so as to guide future conduct. It is not available to determine whether past conduct was appropriate. Id. at 12-13. All relevant events in this case occurred more than five years ago and have no bearing on future conduct.

**The Declaratory Judgment Counts Are Not Susceptible to Resolution by Summary Judgment or Otherwise without Resolution of the Entire Complaint for the following reasons:**

- The parties agree the default occurred at 1:45 a.m. on Monday September 15 when Lehman Brothers Holdings Inc. commenced its chapter 11 case. The closing prices on Friday September 12, were not only Friday's prices, they were also the only prevailing market quotes on Saturday, Sunday, and as of 1:45 a.m. on Monday September 15, and they were the last market prices unaffected by the market turmoil created by LBSF's own breach of contract. Whether the Early Termination Date was September 12 or September 15, the closing prices on Friday September 12 prevailed until the markets opened at 9:30 a.m. on Monday September 15. Thus,

---

[2] Specifically, the Declaratory Judgment Counts seek the following declarations: (i) the early termination date was September 15, 2008; (ii) FHLB's calculation of the early termination payment using values as of the close of business on September 12, 2008 violated the swap agreement; and (iii) the early termination payment should be calculated using values from or after September 15, 2008.

# Proskauer»

Hon. Shelley C. Chapman
June 11, 2014
Page 4

LBSF's attempt to designate September 15, as opposed to September 12, as the Early Termination Date does not dictate the applicable pricing at 1:45 a.m. on September 15. Put differently, LBSF's first count requests declaratory judgment of an immaterial issue.

- Next, LBSF requests a declaration that FHLB's calculation of the amounts owing as of September 12 was improper and invalid as a matter of law. See April 7 Letter at 2. To make that determination, the Court will not only have to look at the snippet of contract language LBSF quotes in its letter (which language supports FHLB), but the Court will also have to look at other language in the contract providing that the day and time "*as of which*" quotations are obtained will be selected in good faith by the party making the calculation (FHLB). As the non-breaching party, FHLB has the exclusive right to calculate amounts owed. Determining these issues will similarly require the Court to interpret the entire contract.

For instance, LBSF contends the "amounts due and owing upon the termination of the contract must be determined 'on or as soon as reasonably practicable after the [] Early Termination Date.'" April 7 letter at 2 (contract language is underscored). But, the fact that the contract says the amounts due should be calculated on the Early Termination Date or as soon as reasonably practicable thereafter, speaks to when the calculation is to be made. It says nothing about which prices (i.e., prices as of when) are to be used in the calculation. As one would expect, the contract says nothing barring the use of the only market prices available at 1:45 a.m. on Monday simply because they were also the closing prices on Friday evening. In fact, we believe that if an evidentiary hearing is ultimately required, the evidence will demonstrate that using Friday's closing prices is consistent with logic, market convention, and reasonable business practice. Moreover, FHLB's exclusive right to request quotations as of a day and time it selects in good faith, by itself shows the contract parties contemplated more than one possible calculation, thereby negating LBSF's implicit premise that there is only one right answer, and such answer requires the use of prices after the filing in the midst of market disruption caused by the filing. The contract affords a counterparty such as FHLB substantial leeway. Plainly at this pre-pleading stage (no answer has been filed or is yet due), there is a contested issue of fact as to whether FHLB properly exercised the discretion the contract provides it – as the non-defaulting party – in making the calculation of value. Tellingly, LBSF nowhere alleges that FHLB acted otherwise than in good faith in making that calculation.

**LBSF Failed to Cite a Decision in this District the Court Would Want to Consider**. LBSF contends the Court can grant declaratory judgments in its favor based on the plain meaning of the contract language it cites. FHLB contends the contract language cited by LBSF has a completely different plain meaning, and there is other pertinent contract language that supports FHLB. But, LBSF failed to advise the Court that the very same language LBSF contends has a plain meaning, was held ambiguous in this district in *Peregrine Fixed Income Limited v. JP Morgan Chase Bank*, 05 Civ. 4351, 2006 U.S. Dist. LEXIS 8766, *6 (S.D.N.Y. 2006).

**Of All the Court's Options, LBSF's Proposal Is the Most Impractical**. Even if the legal bars to LBSF's declaratory judgment counts did not exist, to determine LBSF's declaratory judgment requests, the Court could (a) determine whether the contract has a plain meaning from

**Proskauer»**

Hon. Shelley C. Chapman
June 11, 2014
Page 5

the papers, (b) determine the contract is ambiguous from the papers, or (c) take evidence as to the meaning of the contract and then determine whether it has a plain meaning or is ambiguous and should be interpreted with the help of the evidence at trial. Whichever mode of decision the court chooses, however, we submit that the Court should have the whole dispute in front of it so it can make its rulings in context and not in isolation. Put differently, it makes no sense to declare one or two facts at a time, in isolation, especially when there may be a need for evidence as found by the District Court in *Peregrine*. Moreover, must the Court, witnesses, clients, and attorneys attend multiple hearings as facts are determined one at a time?

**FHLB is Entitled to Discovery prior to Summary Judgment Motions**. FHLB requests discovery before any summary judgment motions are filed. The discovery sought will include LBSF's (and other Lehman entities') actions with respect to other swap counterparties, including those (like FHLB) whose swaps were automatically terminated, positions LBSF (and other Lehman entities) have taken with respect to the calculation of termination payments, and LBSF's (and other Lehman entities') internal interpretations of the swap agreements at issue.

**LBSF Will Not Be Prejudiced By Denial of Its Request**. If LBSF's request to file summary judgment motions is denied for now, LBSF loses nothing. If the counts survive the Motion to Dismiss, then LBSF can proceed with its summary judgment motion if the Court wants to preside over piecemeal litigation. If the Motion to Dismiss is granted, however, then LBSF can still litigate the very issues it is trying to isolate by its Declaratory Relief Counts in the context of the all-inclusive claim for damages. Those same issues will be addressed in litigation involving the breach of contract claim and thus LBSF loses no substantive rights.

FHLB reserves all rights as to the arguments made by LBSF in support of partial summary judgment until the appropriate time for a response.

Based on the above, FHLB respectfully requests that this Court deny LBSF's request to proceed with its partial summary judgment motion and defer such motion, if any, until after adjudication of the Motion to Dismiss and completion of discovery.

Respectfully,

/s/ Martin J. Bienenstock

Martin J. Bienenstock

cc: Stephen L. Ratner
    Philip M. Abelson
    W. Timothy Miller
    W. Stuart Dornette
    Jayant W. Tambe
    Lisa G. Laukitis